IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILADELPHIA PROFESSIONAL COLLECTIONS, LLC, | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | Case No. 2:21-cv-05476-GAM |
| CRAWL SPACE DOOR SYSTEM, INC. d/b/a CRAWL SPACE DOOR SYSTEMS, INC., | : | |
| | : | |
| *Defendant*. | : | |
| | : | |

## <u>ORDER</u>

AND NOW, this ____ day of _____, 2022, it is hereby ORDERED that

Plaintiff's Motion for Summary Judgment is GRANTED, and judgment is entered in favor of

Plaintiff and against Defendant in the amount of $677,077.93, plus interest of $127,535.52, for a

total judgment of $797,613.45 as of November 1, 2022, with per diem interest of $110.15.

BY THE COURT:

_____
McHugh, J.

29672786v.1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILADELPHIA PROFESSIONAL COLLECTIONS, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>CRAWL SPACE DOOR SYSTEM, INC. d/b/a CRAWL SPACE DOOR SYSTEMS, INC.,<br><br>*Defendant*. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CIVIL ACTION<br><br>Case No. 2:21-cv-05476-GAM |

### PLAINTIFF PHILADELPHIA PROFESSIONAL COLLECTIONS, LLC'S
### MOTION FOR SUMMARY JUDGMENT

For the reasons set forth in the accompanying Memorandum of Law, Plaintiff

Philadelphia Professional Collections, LLC ("PPC") moves for summary judgment on liability

and damages against Defendant Crawl Space Door System, Inc. d/b/a Crawl Space Door

Systems, Inc.  PPC respectfully requests that the Court enter judgment in favor of PPC and

against Crawl Space in the total amount, with interest, of $797,613.45 as of November 1, 2022,

with per diem interest of $110.15.

WHITE AND WILLIAMS LLP

By:_____
       Peter J. Mooney, Esquire
       Farzana Islam, Esquire
       *Attorneys for Plaintiff,*
       *Philadelphia Professional Collections, LLC*
       1650 Market Street
       Suite 1800
       Philadelphia, PA 19103
       (215) 864-7164

Date:  October 7, 2022

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PHILADELPHIA PROFESSIONAL COLLECTIONS, LLC, | : |
| *Plaintiff*, | : |
| | : |
| | : |
| v. | :   CIVIL ACTION |
| | :   Case No. 2:21-cv-05476-GAM |
| | : |
| CRAWL SPACE DOOR SYSTEM, INC. d/b/a CRAWL SPACE DOOR SYSTEMS, INC., | : |
| | : |
| | : |
| *Defendant*. | : |
| | : |

**PLAINTIFF PHILADELPHIA PROFESSIONAL COLLECTIONS, LLC'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>MOTION FOR SUMMARY JUDGMENT</u>**

## I.   <u>INTRODUCTION</u>

Plaintiff, Philadelphia Professional Collections, LLC ("PPC"), by and through its undersigned counsel, submits this Memorandum of Law in support of its Motion for Summary Judgment against defendant Crawl Space Door System, Inc., d/b/a Crawl Space Door Systems, Inc. ("Crawl Space").

This is an action for unpaid legal fees.  PPC moves for summary judgment because Crawl Space has completely defaulted on its responsibility to develop any lay or expert evidence that the unpaid legal fees claimed by PPC are not due and owing.  Crawl Space's President had no personal knowledge of overbilling by W&W, promising instead that Crawl Space's expert would detail any and all instances of overbilling.  Crawl Space has not identified an expert or produced a report, and the time to do so has expired. The Court has previously ruled that Crawl Space is foreclosed from presenting any factual evidence at trial in support of its contention that the

billing was excessive. PPC has produced indisputable evidence of an agreement, breach, and resulting damages, and is entitled to summary judgment.

**II.**     **FACTUAL BACKGROUND**

Plaintiff PPC is a Pennsylvania limited liability company operated by W&W.   See Affidavit of Peter J. Mooney attached hereto as Exhibit A at Paragraph 3. PPC takes assignments of claims for unpaid client fees due to W&W and attempts to collect the receivables. Id.

Defendant Crawl Space is a corporation organized under the laws of the State of Virginia with a principal place of business at 3700 Shore Drive, Ste. #101, Virginia Beach, VA 23455. ECF 3, Paragraph 2.

In October, 2015, William Sykes, President of Crawl Space, contacted Michael N. Onufrak, a former partner located in the Philadelphia office of White and Williams LLP ("W&W") and requested that W&W represent Crawl Space in litigation pending before the United States District Court of New Jersey, captioned Smart Vent Products, Inc. v. Crawl Space Door System, Inc., Docket No. 1:13-cv-05691-JVS-JKW (the "Litigation"). ECF 3 at Paragraph 4.

Before beginning to provide legal services, Mr. Onufrak sent Mr. Sykes an engagement letter for the litigation from W&W's Philadelphia office.  A copy of the engagement letter, dated October 14, 2015 (the "Engagement Letter") is attached hereto as Exhibit C. Mr. Sykes signed the Engagement Letter and returned it to Mr. Onufrak. Sykes Dep. at 7:19-9:11.[1]

As set forth in the Engagement Letter, Crawl Space agreed that W&W would be paid for its legal services on an hourly basis.  As expressly noted by Mr. Onufrak:

> W&W charges for its services on an hourly basis.  The rates set
> forth herein are less than we typically would charge for a case like

---

[1] Relevant portions of Mr. Sykes' Deposition are attached as Exhibit B.

> this one but the rates were adjusted downward to fit within the fee structure acceptable to Selective Insurance Company of America, your carrier . . . . My adjusted hourly rate is $350 per hour. Associates in our Commercial Litigation Group who may be assisting me in the handling of this matter have adjusted hourly rates of $225-$245.  Paralegals have the adjusted rate of $100 per hour . . . . Our hourly rates may be adjusted from time to time, normally at the end of each calendar year . . . .

Exhibit C at 2.

At that time, Selective Insurance Company was paying for Crawl Space's defense, but later withdrew its defense, and WW commenced billing Crawl Space directly for all work on the Litigation. Sykes Dep. at 10:4-11:16.  For a time, Crawl Space paid WW's invoices, but then stopped as the matter approached trial.  Id.

W&W vigorously defended Crawl Space against complex unfair competition, negligent misrepresentation, and federal trademark infringement claims made by its competitor, Smart Vent Products, Inc., which threatened to put Crawl Space out of business.  W&W also asserted and tried Crawl Space's counterclaims against Smart Vent. The case proceeded to trial for three weeks between October 7, 2019 and October 29, 2019.  The jury found in favor of Crawl Space on the claims asserted by Smart Vent and also found in favor of Crawl Space on its counterclaims and awarded Crawl Space $300,000 in damages. Sykes Dep. at 29:12-16.

Thereafter, W&W filed all appropriate post-trial motions on behalf of Crawl Space and a Notice of Appeal to the United States Court of Appeals for the Third Circuit challenging the damages award, the denial of Crawl Space's request for attorneys' fees and Crawl Space's post-trial motion for sanctions.  Id. at 33:12-18.

On or about June 4, 2021, W&W wrote to Crawl Space to alert it to its outstanding balance of $670,077.93 due for legal services rendered and costs incurred by W&W pursuant to the Engagement Letter.  See Exhibit D hereto.  The unpaid invoices are attached hereto as

-3-

Exhibit E.  When Crawl Space failed to pay the outstanding invoices, W&W assigned all of its rights and claims (the "Assignment") against Crawl Space to PPC.  A copy of the Assignment is attached as Exhibit F.

On November 23, 2021, PPC filed a Complaint against Crawl Space in the Philadelphia Court of Common Pleas, November 2021 Term, No. 001950.  The Complaint asserts claims for breach of contract (the Engagement Letter) and unjust enrichment.  See Exhibit G. Crawl Space removed the matter to this Court, and following an unsuccessful motion to transfer the matter to the District of New Jersey, filed its Answer on December 28, 2021. See Exhibit H; ECF 3.

Crawl Space stated in its Answer:

> 14.  Admitted that W&W performed services as it was obligated to perform.  It is denied that W&W performed all services to which it was required and/or requested by Defendant to perform in connection with counterclaims that Defendant had and were or should have been asserted in the litigation.

Crawl Space raised three affirmative defenses, none of which challenged the work performed by W&W or PPC's claim for the fees charged by W&W.  ECF 3.

PPC thereafter served written discovery upon Crawl Space. See Exhibit I hereto. Crawl Space served responses and objections to the discovery on June 15, 2022.  See Exhibit J hereto. In response to Interrogatory No. 1 asking for the identity of all persons who have knowledge of facts relating to claims and defenses in the litigation, Crawl Space identified Mr. Sykes and "counsel, staff and employees of White and Williams who worked in [sic] the case in New Jersey," adding that "any others are legal counsel."  Exhibit J at 2.

Changing course from its Answer defense that W&W did not perform all services requested, Crawl Space stated for the first time in response to Interrogatory No. 1(b) that "W&W overcharged and double billed for work they performed."  In response to Interrogatory No. 3

-4-

asking for the basis for Crawl Space's claim that "W&W failed to perform all of the work that was needed and/or requested" by you in connection with the Litigation, Crawl Space simply responded:

> W&W overcharged and double billed for work they performed. The information about the overbilling will be produced by our expert witness(es) in a few weeks.

Crawl Space gave the same response to Interrogatory No. 4 and Interrogatory No. 6. Exhibit J at 3-4.

PPC deposed Mr. Sykes on June 17, 2022. Mr. Sykes testified that he was the President of Crawl Space, and a lawyer licensed to practice in Virginia.  Sykes Dep. at  6:1-2.  Mr. Sykes confirmed that he did receive the Engagement Letter and that he did sign it.  Id. at 8:10-9:11. Mr. Sykes also agreed that he received W&W's invoices.  Id. at 10:16-11:1.

At the outset of the Litigation, Crawl Space's legal bills were paid by Selective Insurance Company, and Crawl Space was represented by the Rivkin Radler law firm.  Id. at 6:12-7:11. Mr. Sykes testified that Selective believed that the firm was billing too much and hired W&W to replace Rivkin Radler.  Id. at 6:24-7:5. Selective later withdrew from Crawl Space's defense and ceased paying legal bills on behalf of Crawl Space. Id. at 10:4-11:1. Mr. Sykes testified as follows concerning receipt and payment of invoices:

> Q.      So you would then receive during the course of the litigation which I think we can agree extended all the way into 2020, you would receive invoices from White and Williams?
>
> A.      Correct.
>
> Q.      Alright.  And did you pay some of those invoices?
>
> A.      Paid all of them up until the very end.  So I was paying for years.

-5-

Sykes Dep. at 10:22-11:5.

> Mr. Sykes admitted that Crawl Space failed to pay the invoices
> PPC sued to collect:
>
> Q.      Did there come a time when you did not pay the bills that
> came from White and Williams?
>
> A.      Correct.
>
> Q.      Okay.  When did that occur?
>
> A.      I don't have the invoices with me or my list of payments
> but I would think I would have been paid up real close before the
> trial started and then, you know the bills got massive right before
> the trial, during the trial.  We were paid up.  We always paid the
> bills.
>
> Q.      And did there come a point when Crawl Space stopped
> paying White and Williams' bills?
>
> A.      Yes.

Id. at 10:22-12:1.

. . . .

> Q.      Was there a reason or an event that caused you to stop
> paying?
>
> A.      A huge amount.
>
> Q.      When you say the huge amount was it a situation where
> Crawl Space lacked the funds to pay?
>
> A.      Correct.
>
> Q.      Were there deficiencies or problems in the bills that caused
> you to stop paying?
>
> A.      Not when I stopped paying them.  It was the amount of
> money that I couldn't afford.  And then later I started paying like
> $5,000 a month.

Id. at 12:7-17.

Examining the invoice dated July 18, 2019 (approximately three months before trial) for $87,284, with a prior balance due of $52,406[2], for a total of $139,690, Sykes testified as followed:

> Q.    And did you discuss with Ms. [Siobhan] Cole [the lead W&W attorney representing Crawl Space] that Crawl Space wasn't in a position to pay that amount?
>
> A.    I would think that I would have.  I mean, I was shocked when I got a real high bill.  And we couldn't -- in fact, I am not sure exactly which one that we couldn't pay the first one.
>
> Q.    And did you discuss with her whether there were any inaccuracies in the bill?
>
> A.    No.
>
> Q.    Have you ever had a discussion with Ms. Cole about problems with the content of the bills in terms of too much time being charged or double billing or billing for work not done?
>
> A.    I did not discuss it with her, no.
>
> Q.    Did you discuss it with anyone?
>
> A.    Not until the lawsuit you filed against Crawl Space.

Id. at 14:17-15:8.

> . . . .
>
> Q.    And did you have discussion with someone at that point as to the reasonableness of the bills or the accuracy of the bills?
>
> A.    Yes, I had some.  A friend of mine that is an accountant and he looked at it.  And he said that somebody would have to be an expert in this kind of bills.  I am going to have to get an expert to go through it.

---

[2] Mr. Sykes inaccurately testified that Crawl Space was "paid up" before the trial.  Sykes Dep. At 11:17-23.

> Q.      And did you do that?
>
> A.      Not yet, but we are going to hire one.

Id. at 15:13-22.

. . . .

> Q.      So as of today has any expert reviewed this bill for reasonableness?
>
> A.      No, but I am looking to find an expert to do that.  And we'll name it and give you his report.
>
> Q.      Is it your understanding that there was double billing contained in this invoice?
>
> A.      I am not sure if it is this invoice or other ones, but some of the -- on the line items they are really hard to figure out.

. . . .

> Q.      So as of today you haven't received advice from an expert that the bills were containing double billing or charges for work not done or otherwise higher than they should be?
>
> A.      Correct.

Id. at 16:2-20.

. . . .

> Q.      All right.  So in terms of paying the bills that constitute Exhibit 26 which I represent to you is in the range of $670,000, are you prepared to identify the entries for the work that was done that was overbilled or double billed today?
>
> A.      No, I am not prepared today.  The expert will write a report and explain what they think about it.
>
> Q.      Was Crawl Space in a financial position to pay the bill?
>
> A.      No.
>
> Q.      So that no matter what the expert thought, the funds just weren't there?
>
> A.      Correct.

-8-

<u>Id</u>. at 17:3-20.

. . . .

Q.    So the expert is or will review the bills and identify any
       issues that he or she may find in them and communicate
       that to you; that is your expectation?

A.    Yes, sir.

Q.    From your perspective leaving aside the issue of available
       funds, do you have an understanding today as to why these
       bills weren't paid?

A.    Well, they weren't paid because we didn't have that kind of
       money at that time.

Q.    Would you have paid them otherwise?

A.    If it was -- if it was a reasonable amount that we could have
       paid, yes.

Q.    Are you aware of any instances in which White and
       Williams charged for work that it did not do?

A.    I am not, but that is what we are going to hire an expert for
       to be able to write a report and then come to the court
       hearing.

Q.    Well, there are statements in your answer to the effect that
       White and Williams did not do all the things that -- and I
       will defer to the answer, but that White and Williams
       essentially did not do all the tasks that you wanted them to
       do; is that correct?

A.    Yes.

Q.    Tell me about that.  What are the areas or the tasks that you
       wanted them to do that they did not do?

A.    I think the answer that we gave is I have got to prove that,
       but that is what the expert is going to do for us.

Q.    As you sit here are you aware of any instances of White
       and Williams charging for work that it did not do or double
       billing for something that it did do?

-9-

      A.      Well, I have gone through the bills myself.  And there is a lot of different things with block billing that has large amounts.  But you know, I would really have to have an expert to tell me if that is a reasonable way to bill or not.

      Q.      And it sounds like even if the bills were, in everyone's view, completely legitimate and payable Crawl Space just did not have the money to do it anyway, right?

      A.      Correct.

      Q.      Were there claims that you wanted White and Williams to bring in the New Jersey litigation that were not brought?

      A.      No.

Id. at 18:4-20:4.

Mr. Sykes confirmed that the New Jersey litigation ended with a defense verdict for Crawl Space and recovery of $300,000 on its counterclaims.  Sykes Dep. at  29:12-16. Mr. Sykes agreed "we got a verdict, a good defense verdict and $300,000.  So there was no malpractice in the way they handled their case." Id. at 30:19-21.

      Q.      Okay.  And as I read the answer and the discovery responses we received yesterday, the answer says that the firm did not do certain things that you expected them to do. And I am trying to understand what exactly it was that wasn't done that should have been done.

      A.      And I will have our expert witness do a report and send it to you.

Id. at 30:22-31:4.

                       . . . .

      Q.      Well, paragraph 15 [of the PPC Complaint] says the litigation proceeded to -- this is the New Jersey litigation -- proceeded to trial for three weeks between October 9, 2019 and October 29, 2019.

              There the jury found in favor of Crawl Space with respect to its defenses and counterclaims and awarded $300,000 in damages by way of background there.  And that is correct, right?

-10-

> A.     Yes.
>
> Q.     And then thereafter White and Williams filed post trial
>         motions on behalf of Crawl Space and a notice of appeal
>         went to the third circuit challenging the damages awarded
>         and some other things.  Is that correct that White and
>         Williams filed an appeal?
>
> A.     Yes.

Id. at 33:3-18.

Mr. Sykes also testified as follows:

> Q.     In paragraph 20 in the Answer filed in the case brought by
>         PPC paragraph 20 says W&W failed to perform all of the
>         work that was needed and or requested by defendant in the
>         litigation.  And I am just trying to pin down exactly what in
>         your mind was the work that was needed or requested and
>         not done by W&W.
>
> A.     I think, again, I am going to have to rely on the expert
>         witness.  And what if he comes back and says everything
>         he did was correct then I don't have a defense.
>
> Q.     And at that point Crawl Space would pay the bill?
>
> A.     Crawl Space isn't financially able to pay everything that's
>         owed right now.
>
> Q.     But putting that aside, Crawl Space would acknowledge
>         that it owes that money?
>
> A.     If that's what my expert witness turns out in his report,
>         correct.

Id. at 41:2-20.

On March 8, 2022, the Court entered a Scheduling Order in the case directing, among

other things, that:

> Not later than 30 days after completion of fact discovery, Plaintiff
> shall identify any expert it intends to call, and, if Plaintiff intends
> to present an expert, it shall deliver a report to Defendant within 30
> days after identification of such expert.  Defendant shall have until
> 60 days after completion of fact discovery to identify any expert
> and 30 days after that to provide a report.  If Plaintiff had not

-11-

identified an expert, Plaintiff shall have 30 days from receipt of
any expert report from Defendant to submit a responsive report.

In other words, PPC had until July 8, 2022 to identify an expert, which it did not do.  Crawl Space

then had 60 days after June 8, 2022, or until August 7, 2022 to designate an expert and until

September 6, 2022 to provide a report.  Crawl Space failed to identify an expert, and failed to

provide a report. Crawl Space therefore has no defenses to PPC's claim since Mr. Sykes testified

many times that the defensive position of Crawl Space would be spelled out in the report of an

expert, which Crawl Space promised to provide, but did not.

In its September 14, 2022 ruling on PPC's Motion to Compel Discovery, ECF 22, the

Court observed: "I note that my Scheduling Order required defendant to identify any expert 60

days after completion of factual discovery, ECF 11, which fell on August 8, 2022." The Court

further stated: "Defendant is necessarily precluded from presenting any factual evidence at trial

in support of its contention that billing was excessive."[3]

Finally, the rates for the work done by W&W for Crawl Space were set out in the

Engagement Letter.  Attached hereto as Exhibit L is the Affidavit of Siobhan Cole, the lead W&W

lawyer for Crawl Space, which refers to Exhibits M and N confirming the rates in January 2019.

With respect to slightly changed rates for associates, Mr. Sykes said: "The fee change is great and

I approve it.  I appreciate everything you have done for our company."  See Exhibit M.

---

[3] The Court also directed Crawl Space to "certify in writing whether or not any discovery was withheld on the basis
if the attorney-client privilege, and if so , to provide a privilege log by September 28, 2022".  Crawl Space has ignored
this direction.

## II.    LEGAL ARGUMENT

### A.    Standard for Motion for Summary Judgment

Federal Rule of Civil Procedure 56 governs motions for entry of summary judgment. This Court must grant summary judgment if PPC shows that no genuine dispute as to any material fact remains and, therefore, PPC is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). As the moving party, PPC bears the burden of establishing that no genuine issue of material fact remains. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). If this Court finds that PPC has met its threshold burden, Crawl Space must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248. A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The summary judgment standard requires that an opposing party create a "sufficient disagreement to require submission [of the evidence] to a jury." Id., citing Liberty Lobby, 477 U.S. at 251-52.

Bare assertions, conclusory allegations or suspicions are not sufficient to defeat summary judgment. Fireman's Ins. Co. of Newark N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### B.    PPC is Entitled to Judgment as a Matter of Law on its Breach of Contract Claim

It is well-established that three elements are necessary to a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract;

-13-

and, (3) resultant damages. J.F. Walker Co., Inc. v. Excalibur Oil Grp., Inc., 2002 PA Super 39, 792 A.2d 1269, 1272 (Pa. Super. 2002).

PPC has shown that Mr. Sykes signed the Engagement Letter with WW; that WW submitted invoices for services rendered to Crawl Space and Crawl Space never complained about excessive billing and is barred from presenting evidence of excessive invoices; that the total unpaid amount of the invoices is $670,077.93; that PPC is the assignee of all rights and claims of W&W against Crawl Space; and that PPC is entitled to an award of damages in the form of unpaid legal fees and costs reflected in the invoices, plus interest.  PPC submits with this Memorandum the Affidavit of Siobhan K. Cole, the lead attorney for Crawl Space in the New Jersey Litigation, certifying that the unpaid bills accurately reflect the time spent on behalf of Crawl Space by W&W attorneys, and the time is billed at the proper rate.  See Affidavit of Siobhan K. Cole, attached to PPC's Memorandum of Law as Exhibit L.

Crawl Space took no depositions and served no discovery. Crawl Space failed to identify an expert or produce a report and is barred from challenging the WW invoices as excessive. Crawl Space has failed to adduce or present any facts or evidence which would legally justify its failure to pay W&W's legal invoices.

### C.      PPC is Entitled to Interest

PPC seeks $127,535.52 in interest (calculated at 6% simple interest) on the unpaid invoices for legal fees and costs. Pennsylvania recognizes the plaintiff's right to prejudgment interest as a matter of law in contract lawsuits. In Palmgreen v. Palmer's Garage, Inc., 383 Pa. 105 (1955), the Pennsylvania Supreme Court stated that "[i]n all cases of contract interest is allowable at the legal rate from the time payment is withheld after it has become the duty of the debtor to make such payment; allowance of such interest does not depend upon discretion but is

-14-

a legal right." Id. at 108. In <u>Fernandez v. Levin</u>, 519 Pa. 375 (1988), the Court adopted

<u>Restatement (2d) of Contracts</u> § 354, which provides for the recovery of interest if "the breach

consists of a failure to pay a definite sum in money or to render a performance with fixed or

ascertainable monetary value." <u>Id</u>. at 379 (1988).

PPC has calculated interest starting 30 days after the date of each unpaid invoice (because

the Engagement Letter provided that invoices were to be paid within 30 days) and running until

November 1, 2022.  The calculation is summarized in Exhibit K hereto.

## III.   <u>CONCLUSION</u>

Crawl Space owes PPC $670,077.93 for unpaid invoices for legal services and costs, and

has made no challenge to the invoices or amounts and is barred from presenting evidence that the

bills were excessive. Interest of $127,535.52 is due as of November 1, 2022 with per diem

interest of 110.15.  PPC respectfully requests that the Court enter judgment in its favor and

against Crawl Space in the total amount of $797,613.45 as of November 1, 2022.

**WHITE AND WILLIAMS LLP**

By:_____
　　Peter J. Mooney, Esquire
　　Farzana Islam, Esquire
　　*Attorneys for Plaintiff,*
　　*Philadelphia Professional Collections, LLC*
　　1650 Market Street
　　Suite 1800
　　Philadelphia, PA 19103
　　(215) 864-7164

Date:  October 7, 2022

-15-

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| PHILADELPHIA PROFESSIONAL COLLECTIONS, LLC, | : | |
| *Plaintiff*, | : | |
| | : | CIVIL ACTION |
| v. | : | Case No. 2:21-cv-05476-GAM |
| | : | |
| CRAWL SPACE DOOR SYSTEM, INC. d/b/a CRAWL SPACE DOOR SYSTEMS, INC., | : | |
| *Defendant*. | : | |

## <u>CERTIFICATE OF SERVICE</u>

I, Peter J. Mooney, Esquire, hereby certify that on October 7, 2022, I caused a true and correct copy of the foregoing Plaintiff Philadelphia Professional Collections, LLC's Motion for Summary Judgment and accompanying Memorandum of Law in Support to be electronically filed and served via the Court's electronic filing system upon the parties registered to receive electronic filings.  Parties may access this filing through the Court's CM/ECF system.

**WHITE AND WILLIAMS LLP**

By:_____
Peter J. Mooney, Esquire
*Attorneys for Plaintiff,*
*Philadelphia Professional Collections, LLC*
1650 Market Street
Suite 1800
Philadelphia, PA 19103
(215) 864-7164

29672786v.1